UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

     v.

19-CR-227 (JLS) (MJR)

JOSEPH BONGIOVANNI,
PETER GERACE, JR.,

         Defendants.

UNITED STATES OF AMERICA,

     v.

23-CR-37 (JLS) (MJR)

PETER GERACE, JR.,

         Defendant.

## DECISION AND ORDER

Defendants Joseph Bongiovanni and Peter Gerace, Jr. are charged in the eighteen-count second superseding indictment in case number 19-CR-227 with offenses related to defrauding the United States, bribery, distributing controlled substances, obstruction of justice, making false statements, and sex trafficking,

spanning from 2005 to 2019.[1]  *See* Dkt. 89.[2]  Gerace also is charged in the four-count indictment in case number 23-CR-37 with witness tampering and possession with intent to distribute, and distribution of, cocaine, all on November 19, 2019.  *See* Dkt. 1 (23-CR-37).

Both Defendants filed severance motions in 19-CR-227, pursuant to Federal Rules of Criminal Procedure 8 and 14.  Dkt. 296, at 11–12 (Gerace's renewed severance motion);[3] Dkt. 321 (Gerace's supplemental submission in support of his severance motion); Dkt. 343 (Bongiovanni's severance motion); Dkt. 362 (affidavit in support of Bongiovanni's severance motion).  The Government opposed both motions.  Dkt. 328 (opposition to Gerace's motion); Dkt. 365 (opposition to Bongiovanni's motion).  Each Defendant replied.  Dkt. 329 (Gerace); Dkt. 369 (Bongiovanni).

In addition, the Government moved to consolidate for trial the indictment against Gerace in case number 23-CR-37 with the second superseding indictment against both Defendants in case number 19-CR-227.  Dkt. 411; Dkt. 11 (23-CR-37).

_____

[1] The obstruction of justice and false statements counts charge only Bongiovanni. The sex-trafficking conspiracy count charges only Gerace.  Each charge has a slightly different timeframe, but the alleged conduct began in 2005 and continued through 2019.  *See generally* Dkt. 89, at 17–26 (in Count 2, alleging Bongiovanni and Gerace conspired with intent to defraud the United States between 2005 and February 2019), 30 (in Count 7, alleging Gerace maintained a drug-involved premises between 2006 and December 2019).

[2] Unless noted otherwise, citations to docket entries refer to those in case number 19-CR-227.

[3] Unless noted otherwise, all page references are to those automatically generated by CM/ECF, which appear in the header of each page.

The Court directed both Defendants to respond to the Government's motion, addressing both Rules 13 and 14 of the Federal Rules of Criminal Procedure. Dkt. 412; Dkt. 14 (23-CR-37). Each Defendant responded in opposition to the Government's motion. Dkt. 424 (Gerace); Dkt. 425 (Bongiovanni). The Government replied. Dkt. 435; Dkt. 16 (23-CR-37).

On April 12, 2023, the Court issued a text order denying, in full, Defendants' severance motions. Dkt. 434. This Decision and Order now "explain[s] why the specifics of this case and the relevant caselaw require denial" of Defendants' motions. *See id.* This Decision and Order also addresses the Government's motion to consolidate for trial the indictment in 23-CR-37 with the second superseding indictment in 19-CR-227, which the Court GRANTS for the reasons below.

## DISCUSSION

I.  **Defendants' Severance Motions**

Defendants' severance motions lack merit. Each Defendant argues that Federal Rule of Criminal Procedure 8 requires severance because the second superseding indictment suffers from misjoinder, and that Rule 14 requires severance because a joint trial would result in prejudice to each Defendant, for various reasons.[4]

---

[4] At times, the parties do not frame their arguments under the correct rule. The Court analyzes each argument under the appropriate rule and standard—which may not be the rule a party cites for that particular argument. Nevertheless, the Court has considered each argument raised for all applicable purposes.

In particular, Bongiovanni argues he will suffer prejudice in a joint trial with Gerace as a result of the sex-trafficking conspiracy count, which charges only Gerace, due to the nature of that charge, and also because the second superseding indictment alleges he had a relationship with Gerace during the relevant time periods. Bongiovanni also argues that a joint trial with Gerace would preclude him from calling Gerace to testify on his behalf because Gerace would invoke his Fifth Amendment rights at a joint trial, but would testify on Bongiovanni's behalf in severed trials, if Gerace's trial occurred first.

Gerace argues that certain counts charging Bongiovanni only[5] were misjoined with the counts charging Gerace, and that a joint trial of Gerace and Bongiovanni that includes those counts would result in prejudice to Gerace. He also argues he would suffer prejudice from a joint trial with Bongiovanni on Count 2 (charging both Defendants with conspiracy to defraud the United States), Count 8 (charging both Defendants with conspiracy to distribute controlled substances), and any other count that would involve proof related to organized crime—which, Gerace asserts, is relevant only to Bongiovanni's state of mind.

## A. Legal Standards

### 1. Rule 8

Rule 8 of the Federal Rules of Criminal Procedure governs claims of misjoinder. It provides:

---

[5] Counts 1, 3, 4, 10, 11, 16, 17, and 18. *See* Dkt. 321-1.

> (a) Joinder of Offenses. The indictment or information may charge a defendant in separate counts with [two] or more offenses if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

> (b) Joinder of Defendants. The indictment or information may charge [two] or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

Fed. R. Crim. P. 8. If offenses or defendants are improperly joined under Rule 8, a party need not demonstrate it would suffer prejudice if the court were to deny severance. *See United States v. Feyrer*, 333 F.3d 110, 113 (2d Cir. 2003) ("Unless the standards set out in Rule 8(b) are met, a motion for severance should be granted even absent a showing of prejudice.").

Courts analyze whether offenses are properly joined under Rule 8(a). *See United States v. Blakney*, 941 F.2d 114, 116 (2d Cir. 1991) (joinder of offenses permitted "where they 'are based on . . . two or more acts or transactions connected together'") (quoting Fed. R. Crim. P. 8(a)). When analyzing joinder of offenses under Rule 8(a), "no one characteristic is always sufficient to establish similarity of offenses, and each case depends largely on its own facts." *Id.* (internal quotation marks and citations omitted).

Claims that an indictment improperly joined defendants, on the other hand, fall under Rule 8(b). *See United States v. Cervone*, 907 F.2d 332, 340–41 (2d Cir. 1990) (Rule 8(b) "states that participation of multiple defendants in the 'same act or transaction,' or the same 'series' of such acts, will authorize joint trial on common or

individual counts") (quoting Fed. R. Crim. P. 8(b)). Where—as here—a court considers severance motions in a case involving multiple defendants, it applies the stricter Rule 8(b) standard. *See United States v. Turoff*, 853 F.2d 1037, 1043 (2d Cir. 1988). As a result, "multiple defendants cannot be tried together on two or more 'similar' but unrelated acts or transactions; multiple defendants may be tried together only if the charged acts are part of a 'series of acts or transactions constituting an offense or offenses.'" *Id.* (quoting Fed. R. Crim. P. 8(a), (b)).

The Second Circuit has "construed [Rule 8(b)] to mean that joinder is proper where two or more persons' criminal acts are unified by some substantial identity of facts or participants, or arise out of a common plan or scheme." *Cervone*, 907 F.2d at 341 (internal quotation marks and citations omitted). When evaluating joinder under Rule 8(b), courts "apply a commonsense rule to decide whether, in light of the factual overlap among charges, joint proceedings would produce sufficient efficiencies such that joinder is proper notwithstanding the possibility of prejudice to either or both of the defendants resulting from the joinder." *United States v. Rittweger*, 524 F.3d 171, 177 (2d Cir. 2008) (quoting *United States v. Shellef*, 507 F.3d 82, 98 (2d Cir. 2007)) (internal quotation marks omitted). The Rule 8(b) inquiry "turns on what is 'alleged' in the 'indictment,'" and any events that may "transpire at trial are not relevant." *Id.* at 178 (quoting Fed. R. Crim. P. 8(b)).

A "non-frivolous conspiracy charge is sufficient to support joinder of defendants under [Rule] 8(b)." *United States v. Nerlinger*, 862 F.2d 967, 973 (2d Cir. 1988) (defendants properly joined where "alleged to have participated in the

6

same conspiracy and evidence of the central features of that conspiracy . . . was relevant to both defendants," even though they "were not alleged to have had any direct contact with regard to the conspiracy and . . . their respective acts committed in furtherance of the conspiracy occurred during chronologically distinct periods"); *see also Turoff*, 853 F.2d at 1044 (defendants properly joined where "key link [existed] between the two offenses—one scheme stemmed from the other[,]" the "acts involved in each scheme ha[d] more than a temporal and spatial relationship," and "proof of one scheme [was] indispensable for a full understanding of the other").

Joinder of defendants may be proper even where defendants are not charged together in a single, overarching conspiracy. *See Rittweger*, 524 F.3d at 178 ("Provided that the defendants are 'alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses,' . . . members of two or more conspiracies may be joined as defendants even where the members have not been charged as participating in one overarching conspiracy.") (quoting Fed. R. Crim. P. 8(b)); *see also Feyrer*, 333 F.3d at 114 (defendants properly joined where "neither . . . was charged in the conspiracy counts of the other" and "the only defendant charged with participating in both conspiracies[] pled guilty prior to trial," where "the two conspiracies shared a common plan"); *Cervone*, 907 F.2d at 341 (defendant properly joined, even where the "link between [him] and the rest of the indicted defendants [was] somewhat tenuous," and he was not charged in the RICO conspiracy count included in the indictment).

## 2. Rule 14

Even if offenses or defendants are properly joined under Rule 8, courts may grant severance if a party would suffer prejudice from a trial at which offenses or defendants are tried together. *See Feyrer*, 333 F.3d at 114; *Blakney*, 941 F.2d at 116. Rule 14 provides: "If the joinder of offenses or defendants in an indictment . . . or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a).

To prevail under Rule 14, the moving party must demonstrate "substantial prejudice," which entails showing that a miscarriage of justice would occur if severance were denied. *United States v. Potamitis*, 739 F.2d 784, 790 (2d Cir. 1984). The moving party must show more than "simply . . . a better chance of acquittal" if severance were granted, *id.*, or that "a separate trial would have benefitted the defendant" in some way, *Cervone*, 907 F.2d at 341. Prejudice that may justify severance exists "only when 'there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" *Rittweger*, 524 F.3d at 179 (quoting *Zafiro v. United States,* 506 U.S. 534, 539 (1993)).

When assessing prejudice under Rule 14, courts consider "to what extent the evidence presented at the joint trial would have been admitted at a single-defendant trial because of the alleged conspiratorial nature of the illegal activity." *United States v. Villegas*, 899 F.2d 1324, 1347 (2d Cir. 1990). Courts also consider

8

"whether the jury was instructed to assess the evidence against each defendant separately from the proof against the other defendants." *Id.* That evidence may be admissible against one defendant but not the other, however, does not automatically require severance. *See Rittweger*, 524 F.3d at 179. In such situations, courts also consider whether "the evidence with respect to each of the defendants [is] sufficiently straightforward that the jury [can] consider it without any significant spillover effect." *Id.*

The Supreme Court "has recognized [that] limiting instructions are often sufficient to cure any risk of prejudice." *United States v. Walker*, 142 F.3d 103, 110 (2d Cir. 1998) (citing *Zafiro*, 506 U.S. at 539); *see also Feyrer*, 333 F.3d at 114 (even "where the risk of prejudice is high[,] . . . less drastic measures—such as limiting instructions—often suffice as an alternative to granting a Rule 14 severance motion"). For example, careful use of limiting instructions "throughout the trial explaining when evidence could not be considered against a particular defendant," and a final jury charge that "carefully explain[s] that the jurors must consider the case against each defendant separately," can mitigate any prejudice resulting from joinder. *Rittweger*, 524 F.3d at 179.

Other relevant factors courts may consider in the Rule 14 analysis include: (1) "the number of defendants and the number of counts;" (2) "the complexity of the indictment;" (3) "the estimated length of the trial;" (4) "disparities in the amount or type of proof offered against the defendants;" (5) "disparities in the degrees of involvement by defendants in the overall scheme;" (6) "possible conflict between

various defense theories or trial strategies;" and (7) "prejudice from evidence admitted only against co-defendants but which is inadmissible or excluded as to a particular defendant." *United States v. Gallo*, 668 F. Supp. 736, 749 (E.D.N.Y. 1986). No single factor is dispositive; rather, "the ultimate question is whether the jury can keep the evidence relevant to each defendant separate and render a fair and impartial verdict as to each defendant." *United States v. Locascio*, 357 F. Supp. 2d 536, 543 (E.D.N.Y. 2004) (citing *Gallo*, 668 F. Supp. at 749).

A court's "assessment of the risk of prejudice is . . . fact specific . . . and depends on the circumstances of each case." *Id.* at 543. And whether to grant severance under Rule 14 "falls within the discretion of the trial court." *Potamitis*, 739 F.2d at 790.

## B. Analysis

### 1. Bongiovanni

Bongiovanni argues three bases for severance: (1) the sex-trafficking conspiracy charge against Gerace in Count 9 is improperly joined with the charges against him;[6] (2) even if properly joined, a joint trial that includes Count 9 will

---

[6] In his initial severance motion, addressed to Judge Roemer, Bongiovanni moved to sever Count 7, which charges Gerace with maintaining Pharaoh's Gentlemen's Club as a drug-involved premises between 2006 and December 12, 2019. *See* Dkt. 149, at 4; Dkt. 89, at 30. Bongiovanni does not move to sever Count 7 in his current motion; indeed, he implicitly concedes that Count 7 is sufficiently related to the drug conspiracy charge against both him and Gerace in Count 8. *See* Dkt. 369, at 3 ("Mr. Bongiovanni does not object to the proof that the government claims it has that there were drugs used and/or sold at Pharaoh's . . . . That is relevant to the drug conspiracy."). The Court therefore deems Bongiovanni's Count 7 argument abandoned, but notes that abandonment does not impact the Rule 8 analysis here,

cause spillover prejudice to him; and (3) a joint trial results in prejudice to him because it precludes him from calling Gerace as a witness on his behalf.

### i.  Joinder under Rule 8

The second superseding indictment properly joins Count 9 with the charges against Bongiovanni.  A holistic view of the second superseding indictment reveals that Bongiovanni and Gerace "are alleged to have participated" in both "the same act or transaction" and "the same series of acts or transactions[] constituting an offense or offenses."  *See* Fed. R. Crim. P. 8(b).

Defendants are charged together in two non-frivolous conspiracy counts. Count 2 alleges both Defendants conspired to defraud the United States by:

(1) "interfering with and obstructing . . . the lawful and legitimate governmental functions and rights of the DEA";

(2) "corruptly . . . giv[ing], offer[ing], and promis[ing] a thing of value to a public official, with intent to induce the performance of an official act and to induce a public official to do an act and omit to do an act in violation of his lawful duty"; and

(3) "corruptly . . . demand[ing], seek[ing], receiv[ing], accept[ing], and agree[ing] to receive and accept, a thing of value personally, in return for being influenced in the performance of an official act and for being induced to do an act and omit to do an act in violation of official duty."

---

where the second superseding indictment alleges—in compliance with Rule 8(b)—that Defendants participated in the same act or transaction and series of acts or transactions.

Dkt. 89, at 18.

The indictment then alleges a number of manner and means, as well as overt acts, taken by Defendants to execute the conspiracy. *See id.* at 18–26. As to the manner and means, the indictment alleges Bongiovanni used his position as a DEA special agent in various ways to shield his co-conspirators, friends, and associates— including Gerace—from criminal investigation, and to help those co-conspirators, friends, and associates navigate and minimize the impact of contact with law enforcement when it occurred. *See id.* at 18–21. The indictment alleges that Bongiovanni's conduct along those lines protected "G[erace] and [his] business, Pharaoh's Gentlemen's Club[,] from federal narcotics investigations." *Id.* at 19–20.

As to overt acts, the indictment alleges approximately twenty acts in furtherance of the conspiracy between 2005 and 2019. *See id.* at 21–26. For example, the indictment alleges Gerace called Bongiovanni after a stripper overdosed at Pharaoh's, and Bongiovanni "advised" Gerace "to 'get her out' of the gentlemen's club." *Id.* at 23. It also alleges that, at "various times between . . . 2009 and . . . 2018, female dancers employed at Pharaoh's have overdosed inside Pharaoh's after ingesting controlled substances." *Id.* at 25. And it alleges Gerace "knowingly maintained the premises known as Pharaoh's Gentlemen's Club . . . to facilitate prostitution; to provide drugs and money to Pharaoh's employees in exchange for sex with . . . G[erace] and others; and for the use and distribution of controlled substances" between 2009 and 2019. *Id.* at 26.

Count 8 charges Bongiovanni and Gerace with conspiring to (1) "possess with intent to distribute, and to distribute, cocaine, cocaine base, methamphetamine, . . . amphetamine also known as Adderall, . . . marijuana[,] and heroin," and (2) "use and maintain . . . the premises known as Pharaoh's Gentlemen's Club . . . for the purpose of manufacturing, distributing, and using cocaine, cocaine base, methamphetamine, . . . amphetamine also known as Adderall, . . . marijuana[,] and heroin," between 2009 and 2019. *Id.* at 31.

The allegations supporting each of these conspiracy charges make clear that Bongiovanni and Gerace are alleged to have participated in a common plan or scheme. Both Defendants are charged together in Count 2—a single, overarching conspiracy—that, while not required for joinder under Rule 8(b), is a strong indication joinder is proper. Count 2, in particular, alleges concrete examples of direct interactions between Bongiovanni and Gerace in furtherance of the conspiracy. In sum, the second superseding indictment's joinder of the charges against Bongiovanni with those against Gerace is proper under Rule 8(b).

### ii. Prejudice

The next question is whether a joint trial of Bongiovanni and Gerace would result in impermissible prejudice to Bongiovanni, either from the sex-trafficking conspiracy charge against Gerace in Count 9, or from the unavailability of Gerace as a witness.

Count 9 charges Gerace only with conspiring with others to commit sex trafficking—specifically, conspiring to "recruit, entice, harbor, transport, provide,

obtain, and maintain by any means, in and affecting interstate and foreign commerce, persons," to "benefit, financially and by receiving anything of value, from participation in a venture which has engaged in such acts," with knowledge and reckless disregard for "the fact that means of force, threats of force, fraud, and coercion, and a combination of such means, would be used to cause such persons to engage in a commercial sex act." Dkt. 89, at 32.

Although Bongiovanni is not charged in Count 9, evidence related to Count 9 would be admissible in a trial of Bongiovanni only, in light of the conspiracy charge in Count 2. As discussed above, Count 2 charges Bongiovanni and Gerace with conspiracy to defraud the United States, through Bongiovanni's alleged use of his position as a DEA special agent to protect Gerace and Pharaoh's from federal investigation and criminal charges. *See supra* Section I.B.1.i. Count 2 contains specific allegations related to overdoses at Pharaoh's by dancers employed by Pharaoh's—including Bongiovanni's direct association with such events—as well as Pharaoh's being maintained to facilitate prostitution. *See id.* Bongiovanni is not charged with conspiracy to commit sex trafficking, but his alleged conduct in conspiring with Gerace to defraud the United States is interconnected with Gerace's alleged conduct in Count 9—essentially, enabling the conduct charged in Count 9.

The Government provides specific example of evidence it would seek to admit in a joint trial as well as a trial of Bongiovanni only, including testimony from Pharaoh's dancers, Pharaoh's employees, and other witnesses about overdoses and the role drugs played in the alleged sex-trafficking conspiracy. *See* Dkt. 365, at 9–

10. In particular, the Government argues it would offer evidence that Pharaoh's dancers were provided drugs to coerce them to engage in commercial sex acts, and that fear of withdrawal symptoms also played a coercive role. *See id.* at 10.

The Second Circuit, and other circuit courts, have referenced the practice of providing, withholding, and threatening to withhold drugs as evidence of coercion to engage in commercial sex acts. *See United States v. Shine*, No. 20-314, 2022 WL 761520, at *2–*3 (2d Cir. Mar. 14, 2022) (noting that the defendant "exploited victims' . . . withdrawal . . . to compel them to engage in commercial sex acts when they otherwise would not have done so," and citing specific testimony from victims along those lines); *see also United States v. Wysinger*, 64 F.4th 207, 212 (4th Cir. 2023) (noting defendant did "not dispute that manipulating vulnerable women by exploiting their drug addictions in exchange for prostitution services can be coercion within the meaning of Section 1591" or "that withdrawal symptoms can be 'serious harm' within the statute's broad definition of that term"); *United States v. Abraham*, 63 F.4th 102, 110 (1st Cir. 2023) (noting victims provided testimony about the defendant "manipulating them into joining his sex trafficking ring and his use of coercive methods to keep them under his control, including causing their drug addiction [and] withholding drugs"); *United States v. Carson*, 870 F.3d 584, 594 (7th Cir. 2017) ("[T]here is nothing blurry or in the grey area when the coercion involves, rape, brutal physical violence, abrupt withholding of drugs to cause severe withdrawal symptoms, death threats, taking women's phones and clothing and following them with GPS technology."); *United States v. Mack*, 808

F.3d 1074, 1081 (6th Cir. 2015) (citing trial evidence "that defendant coerced the victims into prostituting themselves by initially supplying them with drugs under the pretense that they were free[;] . . .[w]hen he suddenly cut them off and demanded payment, he exploited their addiction, which his previous supply of free drugs had cultivated"). The Court does not address whether any such evidence is admissible here, but notes that the interconnected nature of the evidence mitigates the risk of substantial prejudice to Bongiovanni from a joint trial.[7]

This is not to say that a joint trial, which includes Count 9, creates no prejudice to Bongiovanni. But a joint trial will not result in the substantial prejudice required to grant severance under Rule 14, especially in light of the availability of limiting instructions to mitigate any prejudice. The Court expects to instruct the jury—as it does in all multi-defendant trials—that the jury must consider the evidence separately as to each defendant and as to each count charged when reaching a verdict. As to any evidence the Court determines is admissible

---

[7] The Court recognizes that another judge in this district has granted severance to a defendant charged only with drug-related offenses, where his co-defendant was charged with sex-trafficking offenses, over the government's opposition and argument that its theory of the case—that the co-defendant coerced the victims to engage in commercial sex acts by providing them with drugs and exploiting their addictions—made severance inappropriate. *See United States v. Shine*, No. 17-CR-28-FPG-JJM, 2019 WL 2442145,at *6–*8 (W.D.N.Y. June 12, 2019). That case is distinguishable because, there, the "alleged sex trafficking activities form[ed] the central focus of the government's case in terms of witnesses, [so] the amount of prejudicial and otherwise inadmissible evidence [was] not . . . inconsequential." *Id.* at *7. Here, based on a holistic reading of the second superseding indictment and the parties' positions in the numerous submissions and representations, the sex-trafficking conspiracy is not "the central focus of" the Government's case. For those reasons, the Court declines to adopt the analysis in *Shine* here.

solely as to Gerace, the Court will, if Bongiovanni requests, instruct the jury to consider such evidence only as to Gerace. For these reasons, the inclusion of Count 9 in a joint trial does not require severance here.

Bongiovanni also argues that severance is required because he wishes to call Gerace as a witness to testify on his behalf, but Gerace would invoke his Fifth Amendment rights at a joint trial and, therefore, would be unavailable to Bongiovanni as a witness. In support of this argument, Bongiovanni submitted an affidavit from Gerace, confirming that Gerace "can and [is] willing to present testimonial evidence . . . on behalf of Mr. Bongiovanni that is exculpatory for him and/or will help his defenses," that Gerace would exercise his Fifth Amendment rights in a joint trial, and that Gerace would be able to testify without exercising his Fifth Amendment rights if he were tried before Bongiovanni. Dkt. 362 ¶¶ 5–9.

A request to sever based on purportedly exculpatory statements from a co-defendant falls under the Rule 14 prejudice analysis. *See United States v. Ferguson*, 676 F.3d 260, 286–87 (2d. Cir. 2011). The Second Circuit has identified four factors trial courts may consider when evaluating severance motions based on a co-defendant's purported willingness to testify: (1) "the sufficiency of the showing that the co-defendant would testify at a severed trial and waive his Fifth Amendment privilege"; (2) "the degree to which the exculpatory testimony would be cumulative"; (3) "the counter arguments of judicial economy"; and (4) "the likelihood that the testimony would be subject to substantial, damaging impeachment." *United States v. Finkelstein*, 526 F.2d 517, 523–24 (2d Cir. 1975). Courts are not constrained to

these factors; the factors "merely define the perimeters of the severance question—the crucial inquiry remains whether the appellants were so prejudiced by a joint trial under these circumstances that severance should have been granted." *Id.* at 523.

Regarding the co-defendant's willingness to waive his Fifth Amendment right and testify, an affidavit to that effect is of limited value. *See id.* at 524. Where the co-defendant had not pled guilty or indicated an intention to do so, "it is unrealistic to think that [he] would be any more willing to waive his constitutional privilege against self-incrimination when called as a witness at a separate trial than he would be willing to insist upon his privilege as a defendant not to take the stand." *Id.* (internal quotation marks and citation omitted); *see also United States v. Wilson*, 11 F.3d 346, 354 (2d Cir. 1993) (where co-defendant purportedly willing to testify "had not pleaded guilty, it was unrealistic to think that [he] would be any more willing to waive his privilege at a separate trial than at the joint trial").

Courts may be skeptical of a co-defendant's purported willingness to testify where the co-defendant "expressly condition[s]" his willingness to testify on being tried before the defendant, which "indicat[es] that [he is] unlikely to waive the privilege against self-incrimination at a separate trial unless [he] had already been acquitted." *United States v. Bari*, 750 F.2d 1169, 1177 (2d Cir. 1984); *see also Finkelstein*, 526 F.2d at 524–25 (noting that scheduling the testifying co-defendant's trial first did not necessarily solve the Fifth Amendment issue, and cautioning that cases referencing order of trials must be read in their specific contexts); *United*

*States v. Schlegel*, No. 06-CR-0550 (JS), 2009 WL 3837305, at *2 (E.D.N.Y. Nov. 16, 2009) (co-defendant's purported willingness to "testify if she [was] tried first [was] speculative" because it was "premised on an unfounded claim that [the co-defendant] would no longer have any Fifth Amendment concerns if her trial proceeded first"—a premise that "[c]learly" was "incorrect").

When considering whether the co-defendant's testimony would be cumulative, courts note that cross-examination may elicit similar testimony, rendering the co-defendant's testimony cumulative, even if "repetition of such testimony might . . . increase[] the likelihood that it would be believed." *Finkelstein*, 526 F.2d at 524. A lack of specific detail about the co-defendant's purported testimony also hampers a defendant seeking severance. *See Bari*, 750 F.2d at 1177 ("The substance of the allegedly exculpatory testimony is not detailed in the various affidavits, and we are thus unable to weigh the importance of any of that testimony against the evidence presented against [the defendant] at trial."); *see also Finkelstein*, 526 F.2d at 523 (affirming denial of severance motion even where defendant offered detailed topics that co-defendants would testify about).

And courts recognize that a co-defendant indicted as part of the same alleged conspiracy is "likely to be subject to substantial, damaging impeachment if he testifies" on behalf of the defendant. *See United States v. Levy*, No. S5 11 Cr. 62(PAC), 2013 WL 787913, at *2 (S.D.N.Y. Mar. 4, 2013); *see also Schlegel*, 2009 WL 3837305, at *3 (noting that co-defendant's "testimony would be subject to

impeachment" because she and the defendant allegedly "jointly participated in the alleged conspiracies for which they [were] charged").

Each *Finkelstein* factor favors denying severance here. First, although Gerace states he would testify on Bongiovanni's behalf, he would do so only if he were tried first. Dkt. 362 ¶¶ 6, 9, 10. To this Court's knowledge, Gerace has indicated no willingness to plead guilty. In any event, the Court is not persuaded that a separate trial of Gerace before Bongiovanni would eliminate Gerace's Fifth Amendment concerns. Second, Gerace's purported testimony amounts to a general denial of the alleged criminal conduct and is not set forth in enough detail for the Court to weigh the significance of that testimony against the other evidence to be presented at trial. *See id.* ¶¶ 5, 7. Third, by all accounts, the parties expect this trial to be lengthy and involve many witnesses, taxing the resources of the Government, witnesses, victims, prospective jurors, the Court, and Defendants themselves. And fourth, Gerace is charged as a co-conspirator in two conspiracy charges against Bongiovanni, subjecting him to significant cross-examination regarding his credibility. Under these circumstances, a joint trial, where Bongiovanni is unable to elicit purportedly exculpatory testimony from Gerace, will not result in substantial prejudice to Bongiovanni.

As to Bongiovanni's severance motion generally, the Court also has considered the factors identified in *Gallo*, 668 F. Supp. at 749, as appropriate, and concludes that they counsel against severance here. The Court is confident that, with the proper instructions, the jury will be able to "keep the evidence relevant to

each defendant separate and render a fair and impartial verdict as to each defendant." *See Locascio*, 357 F. Supp. 2d at 543.

For all of these reasons, severance is not appropriate.

### 2. Gerace

Gerace seeks severance on two bases: misjoinder and prejudice.

### i. Joinder

As with the portion of Bongiovanni's motion seeking severance based on misjoinder, Rule 8(b) governs Gerace's misjoinder argument. Under Rule 8(b), the Court must consider whether the second superseding indictment alleges Bongiovanni and Gerace participated in "the same act or transaction" or "the same series of acts or transactions[] constituting an offense or offenses." *See* Fed. R. Crim. P. 8(b). For the reasons discussed above, the Court concludes that it does. *See supra* Section I.B.1.i.

Gerace's arguments to the contrary do not change the analysis. For example, Gerace argues he is not charged in Count 16, which alleges Bongiovanni obstructed justice by removing and concealing a DEA case file at his residence, and Count 16 does not incorporate by reference any charges against Gerace. But, even if true, this argument does not render joinder improper under Rule 8(b) because the second superseding indictment clearly alleges participation in the same act or transaction and series of acts or transactions, and alleges that Count 16 is part of that series of transactions. Nor is a RICO conspiracy charge required to join defendants in a single indictment. *See, e.g.*, *Rittweger*, 524 F.3d at 175, 177–79 (joinder of

defendants proper in case involving conspiracy to commit securities and wire fraud, among others) *Nerlinger*, 862 F.2d at 969, 973 (joinder of defendants proper in case involving conspiracy to commit mail fraud); *Turoff*, 853 F.2d at 1042–44 (joinder of defendants proper in case involving tax and mail fraud charges).

Gerace also argues that including in a joint trial charges against Bongiovanni only that relate to Bongiovanni's alleged conduct with Michael Masecchia[8] is improper. He focuses on Count 1, which charges Bongiovanni with conspiracy to defraud the United States between 2008 and 2019 through Bongiovanni's alleged use of his position as a DEA special agent to shield his friends and associates, including Masecchia, from investigation and charges for federal crimes. *See* Dkt. 89, at 4–17.

This argument, too, fails to alter the outcome of the Court's analysis under Rule 8(b). Regardless of the allegation that Bongiovanni engaged in a separate conspiracy with Masecchia—during the same time period and using similar manner and means[9] as the alleged conspiracy involving Bongiovanni and Gerace—the indictment alleges that Bongiovanni and Gerace participated in the same act or transaction and series of acts or transactions, rendering joinder of Defendants proper under Rule 8(b). *See Feyrer*, 333 F.3d at 114 ("For instance, Feyrer, Wolff[.]

---

[8] Masecchia pled guilty on December 9, 2020. *See* Dkt. 69.

[9] The manner and means alleged as to the Bongiovanni-Masecchia conspiracy charged in Count 1 are similar to the manner and means alleged as to the Bongiovanni-Gerace conspiracy alleged in Count 2. Although not critical to the Court's Rule 8(b) analysis, the Court notes that Count 1 appears to be part of the same series of transactions as those charging Bongiovanni and Gerace.

22

and the brokers at the Symons Group were common and central participants in both stock manipulation plans. . . . Moreover, the two conspiracies shared a common plan, namely, to generate income for Feyrer, Wolff[,] and the Symons Group brokers through fraudulent stock transactions."). Gerace does not cite any cases that compel a different conclusion.[10] *Cf. United States v. Kouzmine*, 921 F. Supp. 1131, 1133 (S.D.N.Y. 1996) (severance granted where there was "no colorable argument . . . that both conspiracies alleged . . . were part of a single overarching scheme," "[n]or [was] there an identity of participants").

For these reasons, and those discussed in detail above at Section I.B.1.i, the second superseding indictment properly joins the charges against Gerace with those against Bongiovanni.

### ii. Prejudice

The Court next considers whether a joint trial of Gerace and Bongiovanni would result in impermissible, substantial prejudice to Gerace, counseling severance under Rule 14. Gerace argues principally that a joint trial would prejudice him because it would involve testimony and evidence about "Italian Organized Crime," which, he claims, relates only to Masecchia and Bongiovanni, and not to the charges against him. The Court disagrees.

First, as the Court has stated on the record, it plans to address the admissibility of evidence—and terminology—related to "Italian Organized Crime,"

---

[10] To the extent *United States v. Lech*, 161 F.R.D. 255 (S.D.N.Y. 1995), may suggest a different outcome, the Court declines to follow it—and instead adheres to the Second Circuit's Rule 8(b) authority.

as appropriate, through motions *in limine*.  In other words, it is not a foregone

conclusion that the Court will admit such—or all manner of such—evidence at trial.

Second, if the Court were to admit such evidence at trial, it would not relate solely

to Bongiovanni.  Count 2—which charges Bongiovanni and Gerace—alleges, among

other things, that Bongiovanni acted to:

> dissuade other members of law enforcement: from conducting
> investigations of his coconspirators, friends, associates and
> individuals [he] believed to be connected to or associated with IOC,[11]
> including the defendant GERACE and others; and from conducting
> investigations into any individuals who may have been able to expose
> his criminal activities and those of his friends, associates, and
> individuals [he] believed to be connected to or associated with IOC.

Dkt. 89, at 19.[12]  Either way, the presence of allegations in the second superseding

indictment, and the possibility of evidence regarding organized crime at trial, do not

impose the substantial prejudice required to grant severance under Rule 14.

To the extent Gerace argues he will suffer spillover prejudice from the counts

charging only Bongiovanni—such as, for example, the obstruction of justice and

false statements charges in Counts 10, 11, 16, 17, and 18—the Court is confident

that, with the proper instructions, the jury will be able to "keep [any] evidence

---

[11] The second superseding indictment defines IOC as "Italian Organized Crime."
Dkt. 89, at 2.

[12] The Court would entertain requests from Gerace for limiting instructions as to
specific evidence (if any) related to "Italian Organized Crime" that the Court
determines is admissible only against Bongiovanni.  And, as explained above, before
the jury begins deliberations, the Court expects to instruct the jury that it must
consider evidence separately as to each Defendant and each charge.

relevant to each defendant separate and render a fair and impartial verdict as to each defendant." *See Locascio*, 357 F. Supp. 2d at 543.

### iii. Request for Court Review of Grand Jury Minutes, and for Disclosure

Gerace urges the Court, again, to "review all grand jury evidence and instructions relating to the mafia and/or IOC," and "renews his request for Rule 6 disclosure." Dkt. 329, at 5.

The Court has considered, and denied, the request that it review grand jury minutes. *See* Dkt. 319, at 8–9. Because nothing raised in these submissions changes the Court's previous decision, the Court denies Gerace's request for Court review of grand jury minutes, and for disclosure of such minutes.[13]

## II.   Government's Motion to Consolidate Indictments

The Government moves to consolidate for trial the indictment in case number 23-CR-37 with the second superseding indictment in case number 19-CR-227. Because the charges against Gerace in the 23-CR-37 indictment could have been joined with the charges against Bongiovanni and Gerace in the 19-CR-227 second superseding indictment, and consolidating the indictments for trial does not result in substantial prejudice to either Defendant, the Court grants the Government's motion.

---

[13] To the extent any of these grand jury minutes fall under 18 U.S.C. § 3500, the Court trusts the Government has produced, or will produce, them to Defendants pursuant to the January 9, 2023 protective order (Dkt. 347).

Federal Rule of Criminal Procedure 13 provides: "The court may order that separate cases be tried together as though brought in a single indictment or information if all offenses and all defendants could have been joined in a single indictment or information." Fed. R. Crim. P. 13. Rule 13 refers to the joinder requirements in Rule 8. *See United States v. Halper*, 590 F.2d 422, 428 (2d Cir. 1978) (noting that "reference is necessarily made to Rule 8(a) of the Federal Rules of Criminal Procedure"). The Court discussed those Rule 8 standards at length above. *See supra* Section I.A.1. To summarize, joinder of offenses is proper if the offenses "are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). And joinder of defendants is proper if the defendants "are alleged to have participated in the same act or transaction, or in the same series of acts or transactions." Fed. R. Crim. P. 8(b).

After considering whether Rules 13 and 8 permit consolidation, courts must consider whether impermissible prejudice would result from consolidation. *See Halper*, 590 F.2d at 428 ("[C]onsolidation for trial under Rule 13 is permissible only if the doctrine of trial expediency . . . may be effected without interference with substantial justice." (internal quotation marks and citation omitted)). As such, the Court must consider whether Federal Rule of Criminal Procedure 14(a) would permit severance if the indictments were consolidated. *See supra* Section I.A.2 (discussing, at length, the Rule 14(a) standard).

26

The indictment in 23-CR-37 charges Gerace with three counts of witness tampering as to Witness 1 on November 19, 2019. *See* Dkt. 1 (23-CR-37).[14] Counts 1 and 2 allege that Gerace and others acted to prevent the testimony of Witness 1 in, and to induce Witness 1 to withhold information from, "a federal grand jury investigation and subsequent proceedings involving . . . [Gerace] . . . in the United States District Court for the Western District of New York." *Id.* at 1, 2. Count 3 alleges that Gerace and others acted to "hinder, delay, and prevent communication [by Witness 1] to a law enforcement officer and judge of the United States of information relating to the commission and possible commission of a federal offense." *Id.* at 2. Count 4 alleges that, also on November 19, 2019, Gerace possessed with intent to distribute, and distributed, cocaine. *Id.* at 3.

The offenses charged in the 23-CR-37 indictment could have been joined with the charges in the 19-CR-227 second superseding indictment. The conduct alleged in the 23-CR-37 indictment occurred less than three weeks after the grand jury returned the original indictment in 19-CR-227, and less than two weeks after that indictment was unsealed. *See* Dkt. 1; Dkt. 5; Dkt. 1 (23-CR-37). The grand jury later returned a superseding indictment in 19-CR-227, and the Government states that Witness 1 testified in front of the grand jury related to that indictment. The conduct alleged in the 23-CR-37 indictment occurred during the timeframe Witness 1 participated in the grand jury investigation. Ultimately, the second superseding

---

[14] The three witness tampering charges appear to stem from the same alleged conduct—essentially, charging Gerace under different theories based on one alleged incident involving one witness. *See id.* at 2.

indictment in 19-CR-227 charged Gerace with numerous offenses related to bribery, drug trafficking, and sex trafficking. The conduct alleged in 23-CR-37, therefore, is part of a common scheme or plan with that alleged in the second superseding indictment in 19-CR-227, and consolidation complies with Rule 8(a). *See, e.g.*, *United States v. Montgomery*, 358 F. App'x 622, 627–28 (6th Cir. 2009) (indictment charging witness tampering properly consolidated for trial with indictment charging drug distribution and conspiracy).

The allegations and charges in the 23-CR-37 indictment also are part of the same series of acts or transactions alleged in the 19-CR-227 second superseding indictment. In particular, the witness tampering charges allege that Gerace and others acted to hinder and dissuade Witness 1 from participating in a federal grand jury investigation—specifically, the investigation into conduct by Gerace, Bongiovanni, and others, which ultimately resulted in the second superseding indictment against both Defendants in 19-CR-227. The Court already concluded that the second superseding indictment properly joined Bongiovanni and Gerace. *See supra* Sections I.B.1.i, I.B.2.i. For those reasons, and the reasons mentioned here, consolidation of indictments for trial complies with Rule 8(b).

Nor will consolidation of the indictments for trial result in substantial prejudice to either Defendant under Rule 14(a).

Gerace argues, in conclusory fashion, that he likely would testify on his own behalf in defense of the witness tampering charges but may not wish to do so as to

the charges in 19-CR-227.  This unspecific intent to testify does not establish prejudice.  *See supra* Section I.B.1.ii.

Bongiovanni argues that consolidation of indictments would heighten the prejudice he would experience from a joint trial of him and Gerace on the 19-CR-227 charges.  The Court identifies nothing about the witness tampering and drug distribution charges against Gerace in 23-CR-37 to alter its conclusion that a joint trial with the 19-CR-227 charges will not create substantial prejudice to Bongiovanni.  *See supra* Section I.B.1.ii.

Moreover, the witness tampering charges against Gerace in 23-CR-37 are similar in nature to the obstruction of justice charges against Bongiovanni in 19-CR-227.  *See, e.g.*, Dkt. 89, at 34.  And the drug distribution charge against Gerace in 23-CR-37 is similar in nature to the drug conspiracy charge against Gerace and Bongiovanni in 19-CR-227.  *See id.* at 31.  Because Defendants are charged with offenses of a similar nature in 19-CR-227, consolidation of the 23-CR-27 charges with the 19-CR-227 charges for trial will not create substantial prejudice to either Defendant.

Finally, the Court notes that alleged evidence related to the conduct of Gerace and others in 23-CR-37 would be admissible in a trial that only included the charges in the 19-CR-227 because such evidence would relate to, among other things, Gerace's consciousness of guilt.  Bongiovanni is not alleged to have participated in the conduct charged in 23-CR-37, and is free to elicit testimony to that effect—on cross-examination or otherwise.  Again, the Court will give limiting

instructions, as appropriate and if requested, as to any evidence admissible as to Gerace only.

For these reasons, and after considering the other factors identified in *Gallo*, 668 F. Supp. at 749, as appropriate, consolidation for trial of the indictment in 23-CR-37 with the second superseding indictment in 19-CR-227 complies with Federal Rules of Criminal Procedure 13 and 14.  The Court, therefore, grants the Government's motion.

## CONCLUSION

For the reasons above: (1) severance is not appropriate here; and (2) the Court GRANTS the Government's motion to consolidate for trial the indictment in 23-CR-37 with the second superseding indictment in 19-CR-227 (Dkt. 411 (19-CR-227); Dkt. 11 (23-CR-37)).

The Pretrial Order (Dkt. 325), as modified (Dkt. 439), and all other appropriate documents in case number 19-CR-227, shall apply equally to 23-CR-37.

**All future docketing in case number 19-CR-227 and case number 23-CR-37 shall be entered on the 19-CR-227 docket.  All future filings shall include both captions,** as set forth on page one of this Decision and Order. SO ORDERED.

Dated:      April 28, 2023
            Buffalo, New York


                              JOHN L. SINATRA, JR.
                              UNITED STATES DISTRICT JUDGE